Millard GRIFFITH, John Baker and Bernice Mays, Plaintiffs-Appellants,

v.

BELL–WHITLEY COMMUNITY ACTION AGENCY et al., Defendants-Appellees.

No. 77–1675.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 10, 1979.

Decided Jan. 31, 1980.

counties. The agency was formed in 1969 for the stated purpose of developing a program to eliminate poverty in those counties. BWCAA's programs are funded by the federal government pursuant to Title II of the Economic Opportunity Act of 1964, 42 U.S.C. §§ 2781–2837. As a concomitant of its grantee status, the agency is subject to an extensive statutory (Title II of the EOA) and administrative (945 C.F.R. §§ 1060–78) regulatory program.

The appellants are three former employees of BWCAA who claim the agency discriminated against them in retaliation for their opposition to L. David Stone's attempts to become BWCAA's Executive Director. Stone was appointed Acting Director on July 22, 1974 and became Executive Director on August 29, 1974. The plaintiffs were terminated in September and October of 1974, ostensibly because reductions in federal funding necessitated cut-backs in BWCAA programs. However, all three plaintiffs had worked four to five years for the agency and they assert that under ordinary circumstances, they would not have been laid off as a result of funding reductions. Moreover, the plaintiffs contend that even after its funding was restored, and despite their experience, BWCAA refused to rehire them or offered them only lower status positions at reduced salaries. This, appellants argue, violated their first and fifth amendment constitutional rights.

Laura Bowers Vandergraw, Appalachian Research & Defense Fund of Kentucky, Inc., Lexington, Ky., for plaintiffs-appellants.

Lloyd R. Edens, Denham, Nagle & Edens, Middlesboro, Ky., for defendants-appellees.

Before WEICK and LIVELY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

The plaintiffs-appellants allege that the defendant, Bell-Whitley Community Action Agency (BWCAA), violated their constitutional rights by discharging and refusing to rehire them because they had opposed the election of L. David Stone as BWCAA's Executive Director. The district court held that it lacked subject matter jurisdiction and dismissed the complaint. We affirm on the ground that the complaint does not state a cause of action on which relief can be granted.

## I.

BWCAA is a non-profit community action agency incorporated in Kentucky to serve the residents of Bell and Whitley

On December 18, 1974, the appellants filed written complaints with BWCAA's Executive Director and were informed that the agency's Board of Directors would review their cases at its January 27, 1975 meeting. The Board apparently considered appellants' contentions, but took no action on the matter. The appellants also contacted various federal agencies, but were unable to obtain a formal hearing on their complaints.

In their complaint, as amended, appellants seek damages, mandamus to compel BWCAA's employees to reinstate them, and an order requiring the agency to institute defunding termination procedures which

conform to the requirements of the Administrative Procedure Act (APA). They alleged jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (mandamus), and 5 U.S.C. § 702 (APA).[1] The defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

On August 3, 1977, District Judge Eugene E. Siler, Jr. entered an order dismissing the complaint for lack of subject matter jurisdiction. Relying on *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) and *Hines v. Cenla Community Action Committee, Inc.*, 474 F.2d 1052 (5th Cir. 1973), Judge Siler held that "BWCAA is not a federal agency nor are its employees federal employees."

This appeal followed.

## II.

The plaintiffs-appellants argue that dismissal for lack of subject matter jurisdiction was improper because neither *Orleans* nor *Hines* forecloses a finding that BWCAA is a federal agency bound by the limitations of the Constitution on federal action. Under appellants' construction of those cases, the question whether BWCAA was engaged in federal action when it discriminated against them can be answered only by "sifting facts and weighing circumstances" (*Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961)) in a trial on the merits.

The appellants point out that *Orleans* dealt only with the question whether community action agencies are federal instrumentalities or agencies for purposes of the Federal Tort Claims Act. They argue that the Tort Claims Act is a limited waiver of sovereign immunity applicable only where the government supervises the tortfeasor's daily operations. By contrast, they say, to hold a private enterprise bound by constitutional limitations on federal action a court need only find that the enterprise is in-

volved in a "symbiotic relationship" with the federal government (*cf. Burton v. Wilmington Parking Authority, supra* (state action)) or that there is a "nexus" between the federal government's regulatory scheme and the entity's challenged action (*cf. Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (state action)). The appellants urge this court to construe *Orleans* narrowly to permit a finding that BWCAA, even though not a federal instrumentality for tort purposes, is a federal agency bound by constitutional and APA limitations and subject to mandamus.

Appellants further assert that *Hines*, the district court's other authority, is not controlling. In *Hines*, the Fifth Circuit held that a community action agency is not engaged in federal action and therefore is not limited by the fifth amendment. However, appellants point out, the same circuit's subsequent decision in *Robison v. Wichita Falls and North Texas Community Action Corp.*, 507 F.2d 245 (5th Cir. 1975) read *Hines* to hold only that the Cenla agency is a private corporation, not that all community action agencies are private.

The thrust of the appellants' argument is that, since neither *Orleans* nor *Hines* controls their case, they are entitled to attempt to show that BWCAA's discrimination was federal action. They urge this court to reverse the district court's dismissal and remand the case for a trial on the merits.

The appellees urge that *Orleans* and *Hines* stand for the proposition that community action agencies can never be engaged in federal action. They point out that the *Orleans* Court cited *Hines* (425 U.S. at 818 n. 8, 96 S.Ct. at 1978) as support for its holding that such agencies are private, not federal, employers. The appellees view the citation to *Hines* as evidence that the Court approved the Fifth Circuit's holding that community action agencies are not engaged in federal action. Thus, the appellees reason, *Orleans* established not only

---

1. Section 1331 is the jurisdictional basis for the APA claim of appellants as well as for their damage claim. 5 U.S.C. § 702 is not an independent source of subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977).

that community action agencies are not arms of the federal government, but that such agencies are never engaged in federal action for constitutional purposes. Accordingly, they conclude, the district court lacked subject matter jurisdiction and its dismissal should be affirmed.

### III.

The threshold issue is whether the district court properly dismissed the appellants' complaint for lack of subject matter jurisdiction. Our resolution of that issue depends on the distinction between lack of jurisdiction and failure to state a claim on which relief can be granted.

This is an area of some disagreement among the circuits. For example, *compare Robinson v. Bergstrom*, 579 F.2d 401, 404 (7th Cir. 1978) (holding that the proper ground for dismissal of a § 1983 action in which the plaintiff has failed to establish state action is lack of jurisdiction) *with Meredith v. Allen County War Memorial Hospital Comm.*, 397 F.2d 33, 35 (6th Cir. 1968) (holding that the correct approach in a nonfrivolous but unmeritorious § 1983 case is to dismiss for failure to state a claim).

We quote at some length from the Supreme Court's discussion in *Bell v. Hood*, 327 U.S. 678, 681–83, 66 S.Ct. 773, 775–776, 90 L.Ed. 939 (1946) of the distinction between lack of jurisdiction and failure to state a claim:

> Before deciding that there is no jurisdiction, the District Court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. . . . [W]here the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted, must entertain the suit. . . . The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy.

Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

> . . . The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous. *Id.* (Citations omitted.)

Applying the *Bell v. Hood* distinction to the present case, we hold that dismissal for lack of subject matter jurisdiction was proper as regards the appellants' APA and mandamus claims, but not as regards their claim that BWCAA's discrimination against them violated their constitutional rights.

### A.

Administrative Procedure Act claims and mandamus claims may be asserted only against federal agencies and their employees. 5 U.S.C. § 702 provides that a person suffering legal wrong because of "agency action" is entitled to review, and 5. U.S.C. § 701(b)(1) defines an "agency" as an "authority of the Government of the United States." Furthermore, 28 U.S.C. § 1361 gives the district courts jurisdiction of mandamus actions to compel "an officer or employee of the United States or any agency

thereof to perform a duty owed to the plaintiff." Thus, if community action agencies are not federal agencies and their employees are not officers or employees of the United States, neither an APA claim nor a mandamus action will lie against them.

*United States v. Orleans, supra,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) established that "a community action agency is a local, not a federal, enterprise; thus agents and employees of a local community action agency are not 'employee[s] of the [Federal] government.'" *Id.* at 816, 96 S.Ct. at 1977. Citing the relevant legislative history, the Court emphasized that "Congress intended not to create new federal agencies but rather 'the strengthening of community capabilities'" for dealing with poverty. *Id.* at 817, 96 S.Ct. at 1977.

The broad language and underlying rationale of *Orleans* foreclose any argument that community action agencies are "authorities of the Government of the United States" subject to the APA's procedural requirements or that the agencies' employees are "officers or employees of the United States" subject to mandamus. *Cf. Forsham v. Califano,* 190 U.S.App.D.C. 231, 238, 587 F.2d 1128, 1135 (D.C.Cir.1978), *cert. granted,* 441 U.S. 942, 99 S.Ct. 2159, 60 L.Ed.2d 1044 (1979) (No. 78–1118) (holding under *Orleans* that a federally funded private medical research organization is not an "agency" for purposes of the Freedom of Information Act).

Because *Orleans* forecloses the federal-agency and federal-employee elements essential to APA and mandamus actions, the district court was correct in holding it has no subject matter jurisdiction to hear these claims. Neither claim will ever lie against a community action agency or its employees, and thus both fall under the wholly-insubstantial exception noted in *Bell v. Hood, supra.*

### B.

■■ The claims of constitutional violations are another matter. The appellants allege that BWCAA engaged in federal action when it discriminated against them and that this discrimination violated their constitutional rights. The complaint, as drawn, seeks recovery directly under federal law. Unless that claim is immaterial or wholly insubstantial, the federal courts have jurisdiction to entertain the suit. *Bell v. Hood, supra,* 327 U.S. at 681–82, 66 S.Ct. at 775–76. There can be no question but that the constitutional claim is material; it is the very foundation of this lawsuit. Moreover, only if *Orleans* forecloses any possibility of showing that BWCAA's discrimination was federal action would these constitutional claims be wholly insubstantial. Since we agree with the appellants that *Orleans* does not preclude a showing of federal action, we hold that the district court had jurisdiction to hear the claims of constitutional violations.

Our conclusion that *Orleans* is not dispositive of the federal action issue follows from the distinction between federal action and federal control. The *Orleans* Court phrased the question whether community action agencies are arms of the federal government in terms of whether the government has the power to control the detailed physical performance of the agencies. 425 U.S. at 814, 96 S.Ct. at 1976. Finding no such power to control, the Court held that community action agencies are independent contractors for tort purposes.

The control element is equally relevant to APA and mandamus actions: the jurisdictional question there is whether the defendant is a federal agency or employee, a status inconsistent with the absence of federal control.

■ By contrast, even an independent contractor may be found to have engaged in federal action if it is involved in a symbiotic relationship with the federal government, *see, e. g., Holodnak v. Avco Corp., Avco-Lycoming Div., Stratford, Conn.,* 514 F.2d 285 (2d Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975) (defense contractor); *Simkins v. Moses H. Cone Memorial Hospital,* 323 F.2d 959 (4th Cir. 1963), *cert. denied,* 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964) (private hospital funded

under the Hill-Burton Act, 42 U.S.C. §§ 291 et seq.) or if there is a nexus between its challenged action and the federal regulatory scheme, cf. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (state action); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 176-79, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (state action found because a state regulation required the private club to adhere to its discriminatory bylaws). Therefore, we do not believe the absence of federal control rules out a finding of federal action.

Nor do we view the *Orleans* Court's incidental citation of *Hines* as an indication that it would never find federal action in a suit against a community action agency. Citing *Hines* the Court merely noted that "a community action agency has been held to be a private, not a federal, employer." 425 U.S. at 818 n. 8, 96 S.Ct. at 1978 n. 8. This is entirely consistent with the Fifth Circuit's reading of *Hines* in *Robison v. Wichita Falls and North Texas Community Action Corp., Inc., supra*, 507 F.2d at 251:

> [W]e construe the Court's holding in *Hines* to mean that the particular association involved in that case was a private corporation and not that all community action groups are categorically private corporations for purposes of the Fourteenth Amendment and Section 1983.

*Robison* limited *Hines* to its facts; we have no reason to suppose the *Orleans* Court thought otherwise.

■ The holding of the *Orleans* Court that the absence of federal control makes community action agencies independent contractors does not dispose of the separate question whether those agencies have engaged in federal action in a particular case. That is a question which depends on the relevant facts and "must be decided after and not before the court has assumed jurisdiction over the controversy." *Bell v. Hood, supra*, 327 U.S. at 682, 66 S.Ct. at 776. If, upon consideration of those facts, the court finds federal action was not involved, it must dismiss for failure to state a claim upon which relief can be granted. *Id.; Meredith v. Allen County War Memorial*

*Hospital, supra*, 397 F.2d at 35. Accordingly, we hold that the district court erred in dismissing the appellants' constitutional claims for lack of jurisdiction.

## IV.

The remaining and decisive issue is whether BWCAA was engaged in federal action when it discriminated against the appellants. We hold that it was not and, therefore, affirm the district court's dismissal on the ground that the complaint does not state a cause of action upon which relief can be granted.

Our analysis proceeds in two steps. First, the Supreme Court's discussion of community action agencies in *Orleans* indicates that such agencies are not involved in symbiotic relationships with the federal government. Second, we can find no nexus between BWCAA's alleged discrimination and the federal regulatory scheme.

### A.

■ In *Burton v. Wilmington Parking Authority, supra*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), the Supreme Court established what has come to be known as the symbiotic-relationship approach to state action: overall interdependence between a private enterprise and a governmental entity subjects the private enterprise to constitutional limitations normally applicable only to governmental action. In *Burton*, a black man who had been refused service at a restaurant located in the municipally owned parking garage argued that the restaurant's action violated the fourteenth amendment. The Court noted that the peculiar relationship between the restaurant and the parking facility was mutually beneficial: the restaurant's improvements could not increase its taxes because the lessor was tax-exempt; the restaurant's patrons were afforded a convenient place to park; the garage's convenience for diners provided additional demand for its parking facilities; and restaurant "profits earned by discrimination" and passed on as rent were "indispensable elements in, the financial success of a government agency." 365 U.S. at 724,

81 S.Ct. at 861. The Court held that "The State has so far insinuated itself into a position of interdependence with [the restaurant] that it must be recognized as a joint participant in the challenged activity," and characterized the restaurant's discrimination as state action. 365 U.S. at 725, 81 S.Ct. at 862.

The *Burton* symbiotic-relationship rationale has been applied to find state and federal action in a variety of contexts. *See, e. g., Chalfant v. Wilmington Institute,* 574 F.2d 739 (3d Cir. 1978) (library); *Braden v. University of Pittsburgh,* 552 F.2d 948 (3d Cir. 1977) (private university); *Holodnak v. Avco Corp., supra* (defense contractor). Most nearly on point are two Ninth Circuit cases, *Ginn v. Mathews,* 533 F.2d 477 (9th Cir. 1976) and *Mathis v. Opportunities Industrialization Centers, Inc.,* 545 F.2d 97 (9th Cir. 1976), holding that private nonprofit organizations administering Project Headstart and Manpower Training programs under Economic Opportunity Act grants are engaged in federal action under the symbiotic-relationship rationale.

The appellants argue that, because BWCAA receives virtually all its operating funds from the federal government and is subject to an elaborate and pervasive body of federal regulations, there is a symbiotic relationship between the agency and the federal government. They contend that BWCAA was created specifically to qualify for community action grants, that the agency's very organizational structure was dictated by federal regulations, and that the work force reductions giving rise to this lawsuit were the result of a cutback in federal spending for community action agencies. Pointing out that federal funding is critical to BWCAA's continued operation and that the agency plays a unique and essential part in the federal government's war on poverty, the appellants assert a mutual interdependence which they term "symbiotic."

The Supreme Court's discussion in *Orleans,* however, leads us to conclude that there is no symbiotic relationship between community action agencies and the federal government. The Court there noted that Congress did not intend community action agencies to be federal instrumentalities. Rather, the government's role is "to give counsel and help, *when requested,* and to make available substantial assistance in meeting the costs of [local] programs." 425 U.S. at 817, 96 S.Ct. at 1977 (*quoting* H.R. Rep.No. 1458, 88th Cong., 2d Sess. 10 (1964) U.S.Code Cong. & Admin.News 1964, pp. 2900, 2909 (emphasis in original)). The Court recognized that federal funds are not granted without strings:

> Of course since the community action agencies receive federal funding, they must comply with extensive regulations which include employment policies and procedures, lobbying limitations, accounting and inspection procedures, expenditure limitations, and programmatic limitations and application procedures. 45 CFR pts. 1060–1070 (1974). The OEO also issues numerous guidelines. These regulations and guidelines attempt to assure that the federal money is spent for the benefit of the poor. 425 U.S. at 817–18, 96 S.Ct. at 1977.

Nevertheless, the Court noted, federal oversight of independent contractors is common and, of itself, insufficient to establish federal action:

> Although such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs—or of state governmental bodies—into federal governmental acts. Cf. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). 425 U.S. at 816, 96 S.Ct. at 1977 (Footnotes omitted).

We think *Orleans* is conclusive against the appellants' symbiotic-relationship argument. As that decision makes clear, community action agencies such as BWCAA are state-created entities which exist independent of the federal government. If an agency chooses to comply with federal regulations, it will be eligible to receive federal assistance in dealing with local problems.

If it does not choose to comply, federal funding may be denied but the entity will continue to exist. *See PAAC v. Rizzo*, 502 F.2d 306, 314–15 (3d Cir. 1974), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). Moreover, where federal assistance is terminated for cause, the state or local government or the Office of Economic Opportunity itself may designate a new local agency to receive federal funding under the Act. *See* 45 C.F.R. §§ 1062.70–1062.120. Thus, apart from its interest in seeing that a federal grant is actually used for its intended purpose, the government has no vested interest in the success or even the continued existence of any particular community action agency.

> Nothing could be plainer than the congressional intent that the local entities here in question have complete control over operations of their own programs with the Federal Government supplying financial aid, advice, and oversight only to assure that federal funds not be diverted to unauthorized purposes. *United States v. Orleans, supra*, 425 U.S. at 818, 96 S.Ct. at 1977 (Footnote omitted).

This is hardly the type of interdependent or "symbiotic" relationship that clothes private action with federal authority.

Accordingly, we hold that the rationale of *Orleans* precludes a finding under the symbiotic-relationship approach that community action agencies are engaged in federal action. Because neither *Ginn v. Mathews, supra*, nor *Mathis v. Opportunities Industrialization Centers, Inc., supra*, considered the federal-action question in light of *Orleans*, we do not find their contrary holdings persuasive.

### B.

■ Although *Orleans* forecloses the appellants' symbiotic-relationship argument, it does not preclude a finding that a particular act of a community action agency was federal action for constitutional purposes. We recognize that, even absent the type of symbiotic relationship that clothes every private act with federal authority, there may be a sufficiently close nexus between the government's regulatory scheme and the challenged private action that the latter may be fairly treated as the action of the government itself. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 176–79, 92 S.Ct. 1965, 1973–74, 32 L.Ed.2d 627 (1972); *Braden v. University of Pittsburgh*, 552 F.2d 948, 958 (3d Cir. 1977). Thus, "where regulations give impetus to private conduct so as to foster or encourage it," *Watson v. Kenlick Coal Co., Inc.*, 498 F.2d 1183, 1192 (6th Cir. 1974), or where their effect is to "invoke the sanctions of the [government] to enforce a concededly discriminatory private rule," *Moose Lodge No. 107 v. Irvis, supra*, 407 U.S. at 179, 92 S.Ct. at 1974, federal action will arise.

■ In the present case, however, we can find no nexus between the federal regulatory scheme and BWCAA's alleged discrimination. Funding reductions presumably necessitated some layoffs, but the decision as to who should be terminated was left to the agency. As this court stated in *Orleans v. United States*, 509 F.2d 197, 203 (6th Cir. 1975), *rev'd*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976):

> [T]he requirements imposed on these local agencies by statute and regulations are not concerned with the details of the day-to-day operations of the agencies or the programs which they carry on in the [local] area. They are more in the nature of general instructions to be followed in order to assure that certain policies which Congress had adopted in establishing OEO are respected and adhered to.

The appellants have not shown or even alleged that the federal regulatory scheme gave impetus to, fostered, encouraged, or had the effect of enforcing the agency's allegedly discriminatory private conduct. Under these circumstances, there is no nexus between BWCAA's alleged discrimination and federal regulations upon which to base a finding of federal action.

Since the rationale of *Orleans*, in our view, rules out a symbiotic relationship between BWCAA and the federal govern-

ment, and since the appellants have not shown any nexus between the government's regulatory scheme and the challenged discrimination, we hold that BWCAA was not engaged in federal action when it terminated the appellants. This being the case, the complaint does not allege a violation of the first and fifth amendments for which relief can be obtained. Therefore, even though the district court had jurisdiction to hear these claims of alleged constitutional violations, we affirm its dismissal on the ground that appellants have not stated a claim upon which relief can be granted.

Affirmed. No costs are taxed.