Walter K. GILMORE, Plaintiff-Appellant,

v.

SALT LAKE COMMUNITY ACTION PROGRAM, a Utah corporation; Hal J. Schultz, Executive Director; Robert E. Philbrick, President, Board of Trustees; Richard Fields, Personnel Administrator; Fred Geter, Chairman, Personnel Committee; Ann O'Connell, Terry Williams, John E. Delaney, Ted L. Wilson, Jennings Phillips, Glen Greener, Pete Kutulas, William Dunn, Ralph McClure, Jess Agraz, Don Mierva, Lucy Otero, Glen M. Larsen, Bernice Benns, Lambertus Jensen, Solomon Chacon, Leon Reese, Palmer Depaulis, Richard Ligh, Victor Delgado, Norbest Martinez, Mavis Lindsay, M.C. Eberhardt, Clement Jay, Eva Maez, Jerri Brown, Wayne Horrocks, Hermoine Jex, constituting the Board of Trustees of the Salt Lake Area Community Action Program, their officers, employees, successors and assigns, Defendants-Appellees.

No. 81–1167.

United States Court of Appeals, Tenth Circuit.

April 18, 1983.

Rehearing Denied July 27, 1983.

Kathryn Collard of Collard, Kuhnhausen, Pixton & Downes, Salt Lake City, Utah, for plaintiff-appellant.

Stephen W. Cook of Littlefield, Cook & Peterson, Salt Lake City, Utah, for defendants-appellees.

Before SETH, Chief Judge, and McWILLIAMS and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Walter K. Gilmore served as Fiscal Director of the Salt Lake Community Action Program ("SLCAP") from 1974 to 1977. In 1977, the Executive Director of SLCAP reorganized the Fiscal Department, assumed the position of Fiscal Director, and terminated Mr. Gilmore's employment as a "reduction in force." Mr. Gilmore appealed the termination to the SLCAP Personnel Committee, which sustained the Executive Director's decision. He then filed this suit

under section 1983 [1] against SLCAP, its officers, and its trustees. He alleged that the termination was state action that deprived him of a property interest without due process in violation of the fourteenth amendment. He also included a *Bivens* claim,[2] alleging that the termination was federal action that deprived him of a property interest without due process in violation of the fifth amendment. The district court concluded that neither state nor federal action was present and entered judgment for the defendants. Mr. Gilmore challenges this determination on appeal. He claims that governmental action is present because SLCAP is a "community action agency." [3]

# I

The concept of the community action agency originated in Title II of the Economic Opportunity Act of 1964 (the "EOA"), 42 U.S.C. §§ 2781–2837 (1976) (repealed 1981). Through the EOA's provisions, Congress sought to encourage the creation of community operated agencies that would coordinate federal, state, and private resources to combat poverty at a local level.[4] Congress defined the basic structure

---

1. Section 1983 provides in part as follows:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

   42 U.S.C. § 1983 (Supp. IV 1980). Section 1983 provides a remedy only for acts "under color" of state law. However, state action under the fourteenth amendment is a species of action under color of state law. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 & n. 18, 102 S.Ct. 2744, 2753 & n. 18, 73 L.Ed.2d 482 (1982). Hence, the latter need not be separately proved for a cause of action under § 1983 and the fourteenth amendment.

2. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (providing a cause of action for violation of federal constitutional rights by federal agents).

3. The appellees pose a threshold procedural challenge. The appellees claim that Mr. Gilmore failed to file a notice of appeal within the 30-day time limit prescribed by the federal rules. *See* Fed.R.App.P. 4. The district court entered a final judgment on December 30, 1980, and Mr. Gilmore served a "Motion to Vacate Judgment" on January 9, 1981. This application to the court constituted a timely motion under Federal Rules of Civil Procedure 59(e) to alter or amend the judgment. It was clearly designated a Rule 59(e) motion, and it called into question the correctness of the judgment on material questions of fact and law. *See St. Paul Fire & Marine Ins. Co. v. Continental Casualty Co.,* 684 F.2d 691, 693 (10th Cir.1982). Contrary to the appellees' contentions, there is no requirement that a motion need raise new issues, facts or law to fall within Rule 59. Accordingly, Mr. Gilmore's motion to vacate the judgment tolled the time limit for filing a notice of appeal. *See* Fed.R.App.P. 4(a)(4). His notice of appeal, filed within 30 days of the order denying his motion, was timely with respect to both the order and the underlying summary judgment.

4. Section 201(a) of the EOA set forth the goals of Title II as follows:

   Its specific purposes are to promote, as methods of achieving a better focusing of resources on the goal of individual and family self-sufficiency—

   (1) the strengthening of community capabilities for planning and coordinating Federal, State, and other assistance related to the elimination of poverty, so that this assistance, through the efforts of local officials, organizations, and interested and affected citizens, can be made more responsive to local needs and conditions;

   (2) the better organization of a range of services related to the needs of the poor, so that these services may be made more effective and efficient in helping families and individuals to overcome particular problems in a way that takes account of, and supports their progress in overcoming, related problems;

   (3) the greater use, subject to adequate evaluation, of new types of services and innovative approaches in attacking causes of poverty, so as to develop increasingly effective methods of employing available resources;

   (4) the development and implementation of all programs and projects designed to serve the poor or low-income areas with the maximum feasible participation of residents of the areas and members of the groups served, so as to best stimulate and take full advantage of capabilities for self-advancement and assure that those programs and projects are otherwise meaningful to and widely utilized by their intended beneficiaries; and

and functions of these agencies and established requisites for federal funding. *See* EOA §§ 210–221, 42 U.S.C. §§ 2790–2808. However, Congress left broad discretion to the local communities in the operation of the agencies. *See* H.R.Rep. No. 1458, 88th Cong., 2d Sess., *reprinted in* 1964 U.S.Code Cong. & Ad.News 2900, 2909.

Congress established a number of requirements of particular relevance to this appeal. It provided that "[a] community action agency shall be a State or political subdivision of a State . . . or a combination of such political subdivisions, or a public or private nonprofit agency or organization which has been designated by a State . . . ." EOA § 210(a), 42 U.S.C. § 2790(a). It also specified that "[n]o political subdivision of a State shall be included in the community action program of a community action agency designated under section 2790(a) of this title if the elected or duly appointed governing officials of such political subdivision do not wish to be so included." EOA § 210(e), 42 U.S.C. § 2790(e).

Congress set forth specific requirements for the governing board of the community action agencies, providing,

> Each board to which this subsection applies shall consist of not more than fifty-one members and shall be so constituted that (1) one-third of the members of the board are elected public officials, or their representatives, except that if the num-

ber of elected officials reasonably available and willing to serve is less than one-third of the membership of the board, membership on the board of appointive public officials may be counted in meeting such one-third requirement . . . .

EOA § 211(b), 42 U.S.C. § 2791(b).[5] Regarding the authority of the board, Congress provided,

> The powers of every community action agency governing board shall include the power to appoint persons to senior staff positions, to determine major personnel, fiscal, and program policies, to approve overall program plans and priorities, and to assure compliance with conditions of and approve proposals for financial assistance under this subchapter.

EOA § 211(e), 42 U.S.C. § 2791(e).

SLCAP is a community action agency created pursuant to the EOA. Its avowed purpose is to "prevent and alleviate poverty and its causes." Articles of Incorporation, Record, vol. 2, at 208, 209. It is eligible for and has received federal funding under the EOA.[6]

SLCAP is organized as a private nonprofit corporation under the laws of Utah,[7] as permitted by section 210 of the EOA. *See* 42 U.S.C. § 2790(a). During the period of interest in this suit, its Board of Trustees consisted of thirty members, of whom eleven were apparently public officials,[8] thus

---

(5) the broadening of the resource base of programs directed to the elimination of poverty, so as to secure, in addition to the services and assistance of public officials, private religious, charitable, and neighborhood organizations, and individual citizens, a more active role for business, labor, and professional groups able to provide employment opportunities or otherwise influence the quantity and quality of service of concern to the poor.

42 U.S.C. § 2781(a).

**5.** This subsection provides that of the remaining two-thirds of the board, at least one-third shall be democratically chosen representatives of the poor in the area, and the remainder shall be officials or members of business, industry, labor, religious, welfare, education, or other major groups and interests in the community. EOA § 211(b)(2) & (3), 42 U.S.C. § 2791(b)(2) & (3). Members of the board, other than public

officials, may serve no more than five consecutive years, or more than a total of ten years. *Id.* No limitation is placed on the length of service of public officials.

**6.** SLCAP states that federal grants and contracts comprised sixty-five percent of its total revenues in 1977, while donations, gifts, and contributions provided twenty-eight percent, and contracts with the State of Utah provided five percent. Brief of the Appellees at 8.

**7.** *See* Utah Code Ann. §§ 16–6–18 to 16–6–53 (1953 & Supp.1981).

**8.** The public officials at that time included Salt Lake City Mayor Ted Wilson; City Commissioners Jennings Phillips, Jr., Glen M. Greener, and Jess A. Agraz; and County Commissioners Pete Kutulas, William E. Dunn, and Ralph McClure. Don Mierva, Lucy Otero, Robert

meeting the requirements of section 211(b) of the EOA. *See* 42 U.S.C. § 2791(b).

The SLCAP Board of Trustees promulgated personnel policies for SLCAP and delegated power over personnel decisions to the Executive Director, as authorized by section 211 of the EOA. *See* 42 U.S.C. § 2791. Mr. Gilmore claims that both the policies promulgated by the Board and the specific decision by the Executive Director to terminate his employment constitute governmental action because of the extensive government involvement in creating, regulating, funding, and operating SLCAP.

## II

The Constitution promotes individual liberty by forbidding the government, and the government alone, from engaging in certain activities.[9] *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982); *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Although the pertinent provisions appear uncomplicated, the concept of government action, and the consequent reach of the constitutional proscriptions, has consistently eluded certain definition. *See Reitman v. Mulkey,* 387 U.S. 369, 378, 87 S.Ct. 1627, 1632, 18 L.Ed.2d 830 (1967). Experience has shown that governmental power can be exercised in the absence of an official presence. *See Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). Conversely, not all acts by government employees can be justly characterized as governmental action. *See Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1982).[10]

The Supreme Court has approached the concept of governmental action flexibly. It has pragmatically examined ostensibly private activities to determine if they constitute governmental action. In this regard, the Court has inquired whether a private party is performing a "public function," *see Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), or acting under "state compulsion," *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), whether there is a "nexus," *see Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), or "joint action" between the private party and the government, *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Flagg Brothers v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

These cases, taken together, impart at least two important principles. First, they recognize that power entrusted to the government by the people can ultimately be exercised through nominally private entities, be it through the government's delegation, compulsion, concerted action, or acquiescence. Second, they provide that when these nominally private parties exercise

Philbrick, and John E. Delaney are also listed as public officials in the record. *See* Deposition Exhibit No. 4, Record, vol. 8.

**9.** Constitutional restrictions that apply to the government alone provide a double-edged protection of individual liberty. As is commonly recognized, they limit government encroachment on fundamental rights. In addition, they preserve an area of individual freedom by exempting private action from the reach of the Constitution's prohibitions. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982).

**10.** In *Polk County,* the Supreme Court held that a public defender's actions, when performing a lawyer's traditional functions as counsel in a state criminal proceeding, would not support a § 1983 suit. The Court concluded that the public defender's employment by the state was insufficient to meet the "under color of state law" requirement of § 1983. The Court later noted in *Lugar* that a public defender's employment by the state, standing alone, was insufficient to meet the state action requirement of the fourteenth amendment as well. *Lugar v. Edmondson Oil Co.,* 457 U.S. at 935 n. 18, 102 S.Ct. at 2753–54 n. 18. Indeed, given *Lugar's* holding that state action is a species of action under color of state law, this result is ineluctable: an act that is not taken under color of state law cannot be state action.

governmental power, they shall not exercise it insulated from constitutional constraints.

The problem remains in distinguishing the exercise of governmental power from benign or tangential governmental involvement. This problem is resolved by "sifting facts and weighing circumstances" in each case. *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

### A

The appellant asserts that federal action is present in this case because of the extensive federal funding and regulation of SLCAP. The Court of Appeals for the Ninth Circuit accepted this argument in *Mathis v. Opportunities Industrialization Centers, Inc.,* 545 F.2d 97 (9th Cir.1976). *See also Ginn v. Mathews,* 533 F.2d 477 (9th Cir.1976). However, this result seems questionable in light of subsequent Supreme Court precedent.

Last term, the Supreme Court twice concluded that governmental funding and regulation of an ostensibly private organization, in the absence of other factors, is insufficient to establish governmental action. In *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the Court held that state funding and associated regulation of a private school for troubled youths did not render the school's personnel decisions state action, absent evidence of state influence or control over those decisions. 457 U.S. at 838 n. 6, 102 S.Ct. at 2770 & n. 6. *Compare Milonas v. Williams,* 691 F.2d 931 (10th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983). In *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), the Court held that state funding and associated regulation of nursing homes was insufficient to establish state action in the nursing homes' patient care decisions, absent a showing of government involvement in those decisions. 457 U.S. at

1008 n. 19, 102 S.Ct. at 2788–89 & n. 19. In both of these cases, the facts and circumstances suggested that though the private entities were funded and regulated by the government, they did not exercise government power so as to be subject to constitutional constraints.

■ Federal involvement in community action agencies is analogous to state involvement in the private school in *Rendell-Baker* and the nursing homes in *Blum.* Indeed, in describing community action agencies and the provisions of the EOA in a different context, the Supreme Court stated,

> Nothing could be plainer than the congressional intent that the local entities here in question have complete control over operations of their own programs with the Federal Government supplying financial aid, advice, and oversight only to assure that federal funds not be diverted to unauthorized purposes.

*United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) (footnote omitted) (considering the application of the Federal Tort Claims Act to community action agencies). In the instant case, the appellant has shown no federal involvement in SLCAP beyond the provision of financial aid, advice, and associated regulation. There are no substantial allegations that the federal government exercised any meaningful influence or control over SLCAP's challenged personnel decisions. The facts of this case clearly fall within the ambit of *Rendell-Baker* and *Blum.* Accordingly, we find no federal action. *Accord Griffith v. Bell-Whitley Community Action Agency,* 614 F.2d 1102, 1108 (6th Cir.1980); *Hines v. Cenla Community Action Committee, Inc.,* 474 F.2d 1052, 1057–58 (5th Cir. 1973); *Joseph v. Ulster County Community Action Committee, Inc.,* 475 F.Supp. 944, 948 (S.D.N.Y.1979); *Kelley v. Action For Boston Community Development, Inc.,* 419 F.Supp. 511, 525–27 (D.Mass.1976).[11]

---

**11.** In presenting his fifth amendment claim, the appellant also asserts a cause of action under a Community Service Administration "instruction" regarding personnel practices. This in-

struction is simply a condition to a grant of federal funds requiring that "employee grievances shall be given prompt and fair considera-

**B**

The appellant also claims that his termination was state action subject to the fourteenth amendment.

In *Ginn v. Mathews,* 533 F.2d 477 (9th Cir.1976), the Ninth Circuit concluded that the community action agency was engaged in state action, citing "abundant evidence" in the record. 533 F.2d at 481. To some extent, *Ginn* relied on state funding and regulation in finding state action. 533 F.2d at 480–81 & n. 4. As we explained in examining the federal action issue, funding and regulation provide insufficient grounds for finding governmental action. To the extent that *Ginn* relied on these factors, its result is questionable. But as the appellant notes, other factors in this case suggest grounds for finding state action. In particular, the appellant points to the extensive involvement of public officials in the creation and operation of the community action agency.

The Supreme Court's decision in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), provides the appropriate analytical framework for assessing the relevance of involvement by public officials in nominally private activities. In *Lugar,* the Court considered whether a party who relied on the participation of state officials in a prejudgment attachment of a debtor's property could be held accountable for the deprivation of a federal right. In finding state action, the Court stated the following two-part test:

> First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible .... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

457 U.S. at 937, 102 S.Ct. at 2754. We believe that this test is directly applicable in

determining whether SLCAP engaged in state action in the present case.

■ Examining the second prong of the test first, we inquire whether SLCAP may fairly be considered a state actor. *Lugar* states that a person may be a state actor "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." 457 U.S. at 937, 102 S.Ct. at 2754. The facts in this case indicate substantial participation and aid by state officials in the creation of SLCAP. Federal law gave the State of Utah the option of establishing community action agencies. EOA § 210, 42 U.S.C. § 2790. In exercising this option, Utah could have designated either a political subdivision or a public or private nonprofit organization to serve as a community action agency. *Id.* It chose to designate SLCAP, a private nonprofit corporation. Even after this designation, political subdivisions of Utah retained the option to be excluded from any program administered by SLCAP. EOA § 210(e), 42 U.S.C. § 2790(e). Beyond its participation in the creation of the SLCAP, the state is integrally involved in SLCAP's actual operation. One third of the members of the governing board of SLCAP are local public officials, as required by federal law. EOA § 211(b), 42 U.S.C. § 2791(b). These public officials serve on the board, not in an honorary or figurehead capacity, but rather to offer "services and assistance" as public officials, *see* EOA § 201(a)(5), 42 U.S.C. § 2781(a)(5), in combating poverty, a public concern. Given the state's extensive involvement in the decision to designate a community action agency and to organize it as a private nonprofit corporation, given the veto power of local officials over community action programs, and given the requirement that one third of the board be composed of public officials who serve the board as representatives of government, we conclude that SLCAP can be fairly considered a state actor.[12]

---

tion." Record, vol. 2, at 393. It provides no independent cause of action to the appellant.

**12.** The Eighth Circuit recently reached a similar conclusion in *McVarish v. Mid-Nebraska Community Mental Health Center,* 696 F.2d 69 (8th Cir.1982). In that case, twelve of the sev-

Our conclusion that SLCAP is a state actor does not resolve the issue of whether it engaged in state action in the termination of Mr. Gilmore's employment. *Lugar* instructs that, in addition, we must determine whether the deprivation of federal rights that Mr. Gilmore alleges resulted from the exercise of a right, privilege, or rule of conduct having its source in state authority.

Mr. Gilmore claims that he was deprived of his property interest in employment without due process. He claims that SLCAP personnel policies provided inadequate notice and hearing, and that in any event his termination did not comply with the policies SLCAP set forth. Our examination of the facts surrounding these claims reveals no basis for attributing the alleged deprivation to the exercise of rights, privileges, or decisions originating in the state. While we acknowledge that SLCAP is a state actor, we also recognize that not all actions by state actors are state action.[13]

*See Lugar*, 457 U.S. at 927 n. 6, 102 S.Ct. at 2748–49 n. 6. *Lugar* requires that at a minimum there must be a showing that the deprivation was in some sense attributable to a governmental decision. 457 U.S. at 938 & n. 20, 102 S.Ct. at 2755 & n. 20. *See, e.g., Coleman v. Turpen*, 697 F.2d 1341, 1345 (10th Cir.1982). In this case, the appellant has failed to show that the alleged deprivations resulted from a governmental rule, policy, or decision.

It is true that the personnel policies were formulated by a board of trustees partially composed of public officials; indeed, we considered the composition of the board highly relevant in our determination that SLCAP is a state actor. However, this characteristic of the board, standing alone, does not compel an inference that the personnel practices formulated by the board are the product of a state policy or decision. Although the public officials serve on the board as representatives of local govern-

---

enteen members of the community mental health center's board of trustees were public officials. The court concluded that "[w]here the government is so closely involved in supervising a given activity, state action exists." 696 F.2d at 71. We agree with the Eighth Circuit to the extent that we find that SLCAP is a state actor. When public officials serve on a governing board of an institution, there is always some risk that the officials may advance governmental objectives through the institution. When the officials serve on the board to offer service and assistance *qua* governmental officials, when their presence on the board is a requirement for federal funding, and when the decisions of the board often involve issues of public interest, there exists a substantial risk that governmental objectives can influence institutional action. Accordingly, the institution becomes a state actor even if, as here, the public officials maintain only a minority representation on the governing board. The potential for government influence cannot be directly calibrated to the number of officials on the board; the officials, by virtue of the requirement of their presence and the power of their positions, can exercise influence far in excess of their proportional representation. But unlike the Eighth Circuit, we do not find the presence of public officials on the board sufficient to support a finding of state action. Instead, we adhere to the two-part *Lugar* test and examine the particular action of the board for the presence of a governmental policy or decision.

**13.** It may seem anomalous that not all action by state actors is state action; however, *Lugar* clearly contemplates this result. In discussing *Polk County v. Dodson*, described *ante* note 10, the Supreme Court stated that "although state employment is generally sufficient to render the defendant a state actor under our analysis, . . . it was 'peculiarly difficult' to detect any action of the State in the circumstances of that case." *Lugar*, 457 U.S. at 935 n. 18, 102 S.Ct. at 2753 n. 18. *Compare Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1981) (firing of other state employees by a public defender is state action under the fourteenth amendment). The finding that a state actor is not engaged in state action seems most likely to occur when a nominally private party is imputed to be a state actor by participation in an activity with state officials. By establishing a two-part test for state action, *Lugar* requires not only a characterization of the party as a state actor, but also a finding that the alleged deprivation is related to a governmental objective. In contrast, if the sued party is a state official who purports to act under state authority, his action is conclusively state action. *Griffin v. Maryland*, 378 U.S. 130, 135, 84 S.Ct. 1770, 1772, 12 L.Ed.2d 754 (1964). *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). *Lugar* does not overrule these cases. *See* 457 U.S. at 936, 102 S.Ct. at 2754.

ment and as advocates of governmental objectives, there are no allegations that they represent or advocate a governmental position on personnel policy. Likewise, there is no indication that the Executive Director's decision to terminate Mr. Gilmore's employment in any way reflected a governmental policy or decision. Accordingly, we conclude that the appellant has failed to meet one of the two prongs of the *Lugar* test, and we hold that there is no state action in this case.[14]

### III

In conclusion, we hold that SLCAP's termination of Mr. Gilmore's employment was not federal action. Federal funding and regulation of SLCAP are insufficient to establish federal action. We also hold that the termination was not state action. While we conclude that SLCAP is a state actor, we find that this personnel decision did not result from any rule, policy, or decision attributable to the state. Accordingly, the judgment of the district court is AFFIRMED.

---

**14.** The appellant's brief can be read to suggest a § 1983 claim based on the violation of a federal regulation under color of state law. The appellant has failed, however, to present this claim with sufficient clarity or support to permit this court to rule on the issue.