Peter CASIAS, Jr. Plaintiff-Appellant,

v.

CITY OF RATON; Raton Council on Alcoholism, Inc.; James Turner individually and as City Manager of the City of Raton; Robert E. Gurule, individually and as Mayor of the City of Raton; Charles Buttram, Hurley Bacon, Tony Pesavento, and Jehmiel Sawaya, individually and as City Commissioners of the City of Raton; Robert Scheafer, Wally Clark, Glada M. Sanderson, Larry McQueary, Edwin Lopez, Pete Pardieu, Jim Roper, Bud Davis, and Lloyd C. Skow, individually and as members of the Board of Directors of the Raton Council on Alcoholism, Defendants-Appellees.

No. 82–1412.

United States Court of Appeals, Tenth Circuit.

July 6, 1984.

Fred J. Waltz, Taos, N.M. (Timothy Meehan, of Northern New Mexico Legal Services, Inc., Taos, N.M., with him on the brief), for plaintiff-appellant.

Robert S. Skinner, Raton, N.M., for defendants-appellees.

Before SETH, Chief Judge, and DOYLE and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Peter Casias brought this action under 42 U.S.C. §§ 1983 and 1985(3) (1982) against the City of Raton, New Mexico (the City), the Raton Council on Alcoholism, Inc. (the Council), and various officials of the City and the Council. Casias alleges that he was deprived of his civil rights when defendants terminated his employment as Director of the Council without adequate notice or a hearing. Casias also asserts a state law defamation claim against one of the individual defendants, Glada Sander-

son. At the conclusion of Casias' case, the trial court directed a verdict for defendants on all claims and dismissed the suit with prejudice. We reverse in part and affirm in part.

Prior to his termination, Casias was the Director and Principal Investigator for the Raton Council on Alcoholism, a non-profit organization devoted to the treatment and rehabilitation of alcoholics. Casias had organized the alcoholism program in Raton some years before, and he had been Director of the Council since its inception. Casias was notified of his termination, effective immediately, in a letter from the Board of Directors of the Council. The letter cited a lack of communication with government agencies, attitude toward clients, and administrative problems as the reasons for his discharge. No pretermination hearing was provided.

Following his termination, Casias unsuccessfully sought to obtain a formal public hearing to defend himself and to answer the charges against him. He was allowed to attend a closed executive meeting of the Board of Directors, and the Board later held a public meeting, attended by some thirty people, at which the circumstances surrounding his termination were discussed. However, no formal hearing was ever held. Casias subsequently brought this action against defendants, alleging that he had been denied due process in violation of the Fifth and Fourteenth Amendments.

In order to prevail on his federal claims, Casias must prove that defendants, under color of state law, deprived him of a liberty or property interest protected by the Fourteenth Amendment. *See Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The district court concluded that no property or liberty interest was implicated in the instant case and therefore did not determine whether state action was involved. Because we conclude that a factual issue exists as to whether Casias had a property interest in his employment, we also address the question of state action.

■ The Fourteenth Amendment's protection of property is "a safeguard of the security of interests that a person has already acquired in specific benefits." *Roth,* 408 U.S. at 576, 92 S.Ct. at 2708. To establish a property interest in a particular benefit, one must have a "legitimate claim of entitlement" to it. *Id.* at 577, 92 S.Ct. at 2709; *see Poolaw v. City of Anadarko,* 660 F.2d 459, 463 (10th Cir.1981). However, a claim of entitlement need not be grounded on specific statutory or contractual provisions. "A person's interest in a benefit is a 'property' interest for due process purposes if there are ... rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

■ The sufficiency of such a claim of entitlement is determined by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Poolaw,* 660 F.2d at 463. Although we have found no relevant New Mexico Supreme Court cases, this court has recognized that under New Mexico law a constitutionally-protected property interest can arise despite the absence of a statute or formal contract. *See Chavez v. City of Santa Fe Housing Authority,* 606 F.2d 282, 284 (10th Cir.1979); *cf. Abeyta v. Town of Taos,* 499 F.2d 323, 327 (10th Cir.1974).

■ In the instant case, Casias contends that he had a protected property interest in continued employment because he was terminable only for just cause and with the right to an impartial hearing. Upon review of a directed verdict, we must view the evidence and reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Martin v. Unit Rig & Equipment Co.,* 715 F.2d 1434, 1438 (10th Cir.1983); *Miller v. City of Mission,* 705 F.2d 368, 373 (10th Cir.1983). "[A] directed verdict ... may not be granted unless the evidence points but one way and is susceptible to no reasonable infer-

ences which may sustain the position of the party against whom the motion is made." *Miller,* 705 F.2d at 373 (quoting *Symons v. Mueller Co.,* 493 F.2d 972, 976 (10th Cir. 1974)). *See also Martin,* 715 F.2d at 1438.

■ Viewed in the light most favorable to Casias, the record reveals the following facts. As we have mentioned, Casias was the Director and Principal Investigator for the Raton Council on Alcoholism, a non-profit New Mexico corporation that operated an alcoholic treatment program. The program was financed through a Public Health Service grant obtained by the City of Raton from the United States Department of Health, Education and Welfare (HEW). The City was required by the terms of the grant "to develop and maintain a merit system of personnel administration." Rec., vol. IV, Pl.Ex. 2, at 46.

In early 1974, near the conclusion of the grant application process, the City acknowledged in a letter to HEW that it was aware of the merit system requirement and intended to comply with it. A short time later, Casias asked the City Manager, Jim Turner, about this requirement and was informed that the City's own merit system would be applied to Council employees.[1] Under the City's personnel ordinance, adopted in September 1974, non-elected City employees, with the exception of specified high ranking appointed officials, could be discharged only upon the bases of "work performance by the employee, necessity to the municipality of the work performed by the employee, and the availability of funds." *Id.,* Pl.Ex. 6, at 1. The

ordinance also established an employee grievance procedure which included the right to a public hearing before the City Personnel Board. The Board was comprised of one employee elected by City employees, one department head elected by the heads of departments, and three members of the general public appointed by the Mayor with the City Commission's approval.

If the jury believed Casias' evidence that the City intended for its personnel ordinance to govern the Council on Alcoholism, it reasonably could find that Casias had a "legitimate claim of entitlement" to continued employment with the Council absent just cause and a hearing. *See Vinyard v. King,* 728 F.2d 428, 431–432, (10th Cir. 1984). A jury also reasonably could find that defendants deprived Casias of this property interest without due process. We thus conclude that Casias made out a prima facie case of deprivation of property sufficient to justify submission of the issue to the jury. Defendants contend that the City personnel ordinance is inapplicable to Casias because he reasonably could be construed under the ordinance as a department head. This is a question of fact that appropriately should have been left for the jury, because the ordinance is far from unambiguous on this point. Defendants also argue that even assuming the existence of a property interest, Casias' apparent failure to comply with the precise requirements of the ordinance defeats his entitlement to a hearing. This also presents a question of fact.[2] We cannot agree that the evidence on these issues

---

1. Casias' testimony as to this conversation is supported by a letter he wrote to HEW two years later, informing it that while the Council had not yet formulated its own personnel policy, in the meantime "[t]he policy of the City of Raton is enforced." Rec., vol. IV, Def.Ex. E at 205.

2. It should be emphasized that Casias' compliance or non-compliance with the personnel ordinance is irrelevant to the *existence* of a property interest in his employment. If such an interest did exist, it arose from the HEW grant requirement of a merit system of personnel administration and the City's assurance that Council employees would be covered by the

City's personnel system. If his property interest is thus established, Casias' failure to comply with the ordinance's prerequisite for obtaining a hearing does not necessarily defeat his right to due process, but it is relevant to whether he waived this right. In making this latter determination, the jury should be free to consider all of the circumstances surrounding and subsequent to Casias' termination, including whether he was informed of the ordinance's requirements, the extent to which he attempted to invoke his due process rights, and any actions of defendants that may have prevented him from fully complying with the ordinance.

points all one way and is susceptible to no reasonable inferences sustaining Casias' position. *See Miller*, 705 F.2d at 373.

As we mentioned, the court below did not address the state action requirement. We have recognized that "governmental power can be exercised in the absence of an official presence." *Gilmore v. Salt Lake Community Action Program*, 710 F.2d 632, 635 (10th Cir.1983). In this case, Casias was at least nominally employed with and terminated by the Raton Council on Alcoholism, a non-profit New Mexico corporation. However, the relationship between the Council and the City of Raton was such that Casias may well have been a "de facto" City employee for purposes of the state action requirement of section 1983 and the Fourteenth Amendment. The pretrial order listed this issue as a contested question of fact.

■ In *Gilmore*, we set out a two part test for determining the existence of state action in cases such as this. First, the party charged with the alleged deprivation of a federal right must be one who may "fairly be considered a state actor." *Id.* at 637. Second, the deprivation must have resulted "from the exercise of a right, privilege, or rule of conduct having its source in state authority." *Id.* at 638. In other words, it must be "in some sense attributable to a governmental decision." *Id.* at 638. In applying this test, the essential task is to distinguish "the exercise of governmental power from benign or tangential governmental involvement ... by 'sifting facts and weighing circumstances' in each case." *Id.* at 636 (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961)).

■ Viewed in the light most favorable to Casias, the record shows that under the terms of the grant the City assumed "legal and financial responsibility and accountability both for the awarded funds and for the performance of the grant-supported activity." Rec., vol. IV, Pl.Ex. 2, at 3. Applicants for a staff position on the Council were interviewed in City offices. Employees of the Council were paid with checks whose stubs stated "City of Raton," were given W–2 forms declaring the City as their employer, and were participants in the Public Employees Retirement Association. When Casias wanted a raise, he was required to seek the City Commission's approval. When Casias was terminated, the "employer's certification" to the Public Employees Retirement Association stated that he had been terminated by the "City of Raton." Based on this evidence and the state of the record, we are unable to conclude as a matter of law that state action is absent in the present case. The issue therefore must be addressed on remand.

■ Casias also contends that defendants' actions deprived him of his liberty without due process. We have recognized that the manner in which a public employee is terminated may deprive him of a liberty interest "[w]hen the termination is accompanied by public dissemination of the reasons for dismissal, and those reasons would stigmatize the employee's reputation or foreclose future employment opportunities." *Miller*, 705 F.2d at 373. However, such is not the case here. The evidence indicates that it was Casias who first made public the fact of his termination. Moreover, Casias does not claim that the stated reasons for his discharge stigmatized his reputation. He contends instead that by their conduct both prior to and after his dismissal, defendants created the impression that he was fired for other, more serious reasons, including embezzling funds. We have reviewed the record and can find no evidence that defendants publicly disseminated any information about Casias—either express or implied—that could have damaged his "standing and associations in his community," *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707, or otherwise impeached his " 'good name, reputation, honor, or integrity.' " *id.* (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)); *see also Abeyta*, 499 F.2d at 327. Likewise, there is no evidence that defendants' discharge of Casias imposed on him a "stigma or other disability that foreclosed his free-

dom to take advantage of other employment opportunities." *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. *See also Martin v. Unified School District No. 434,* 728 F.2d 453, 455 (10th Cir.1984); *Weathers v. West Yuma County School District R–J–1,* 530 F.2d 1335, 1338–39 (10th Cir.1976). Accordingly, the directed verdict for defendants on Casias' liberty interest claim was proper. In view of the evidence, Casias' state law defamation claim must also fall.

The judgment in favor of defendants is affirmed as to Casias' liberty interest and defamation claims, reversed as to his property interest claim, and remanded for further proceedings consistent with this opinion.