**Arthur D'AMARIO, III,
Plaintiff, Appellant,**

v.

**The PROVIDENCE CIVIC CENTER AU-
THORITY, et al., Defendants,
Appellees.**

**No. 85–1357.**

United States Court of Appeals,
First Circuit.

Argued Oct. 11, 1985.

Decided Jan. 24, 1986.

John H. Hines, Jr., Providence, R.I., was on brief, for plaintiff, appellant.

Patricia A. Hurst, Providence, R.I., for defendant, appellee Providence Civic Center.

Andrew S. Richardson, Providence, R.I., for defendant, appellee Frank Russo & Gemini Concerts, Inc.

Before BOWNES and TORRUELLA, Circuit Judges, and HILL,* District Judge.

TORRUELLA, Circuit Judge.

The issue presented by this appeal is whether there is sufficient state involvement in the activities conducted by appellees in the Providence Civic Center (Civic Center) as to constitute action "under color of state law" within the meaning of the Civil Rights Act, 42 U.S.C. § 1983;[1] *i.e.*, whether there was "state action."[2] This question was decided adversely to plaintiff-appellant by way of summary judgment, and we thus must rule upon whether the undisputed facts establish as a matter of law that the district court is correct.

The controversy arises in the context of a prohibition against the entry of photographic equipment and picture taking, referred to by all parties as the "no camera

---

* Of the Central District of California, sitting by designation.

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights "fairly attributable to the State?" *Lugar v. Edmondson Oil Co., post,* at 937 [102 S.Ct. at 2753].
*Rendell-Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982).

rule," at some of the artistic performances that take place in the Civic Center. Appellant, a free lance commercial photographer, claims that his free speech rights as guaranteed by the first amendment are violated by the enforcement of this rule, which prevents him from photographing various performers at the Civic Center. It has been his practice in the past to sell such photographs to various interested publications. Appellant contends that there is sufficient involvement by the state in the enforcement of the no-camera rule so as to constitute state action under the nexus test, the symbiotic relationship test or the public function test.

An analysis of the record and the case law leads us to differ with the conclusion reached by the district court.

The Civic Center is a public facility in Providence, Rhode Island, which is leased to non-profit and commercial enterprises by the operating entity of the Civic Center, a public corporation known as the Providence Civic Center Authority (Authority), one of the appellees herein, for the purpose of carrying out diverse civic, cultural and athletic events.[3] Appellee Frank J. Russo, a promoter of musical events, is one of the users of the Civic Center through his company, appellee Gemini Concerts, Inc. (Gemini). Russo reserves space at the Civic Center, matches it with available performers, and then Gemini leases the Civic Center and contracts with the performer.

The source of this appeal's controversy lies in one of the conditions that is sometimes incorporated in the so-called "rider clause" of the contracts negotiated between some performers and Gemini. This provision contains the specific demands and requests of the performers such as any special catering needs, limousine service, or security arrangements and, in some instances, a demand that no cameras be allowed in the auditorium during perform-

ances. None of the appellees have a "no-camera" policy independent of the dictates contained in the rider clauses that may be negotiated by Gemini.

There is no question that the Authority in no way participates in the negotiation of these conditions or that there exists any relationship, other than a contractual one, between the various appellees. It is on this evidence that the court below focused in its bench ruling, an emphasis that has been pursued on appeal by all parties. We find that the district court gave undue attention to the Civic Center's indirect contractual association with the no-camera rule. The record shows that the Civic Center was wholly responsible for enforcing the rule, and we conclude that there is sufficient state involvement in *that* activity to find state action. We reach this conclusion even in the face of our recent decision in *Ponce v. Basketball Federation*, 760 F.2d 375 (1st Cir.1985), a case blissfully ignored by all.

*Ponce* is a case that, in light of its complicated factual content, could very well be described as a close call. The court there was faced with a challenge under § 1983 to a rule promulgated by a private sporting organization. It made persons who were not born in Puerto Rico ineligible to play basketball in Puerto Rico unless they met certain residency requirements or came within established exceptions. The court found that, despite the use of government facilities and the receipt of governmental financial aid by the sports federation, the lack of state participation in the enactment or enforcement of the discriminatory regulation prevented the application of § 1983. The court ruled that the Puerto Rican government's involvement did not establish "the requisite nexus, [because it] failed to identify any affirmative state action as required under *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

---

**3.** The Civic Center Authority was created by the State of Rhode Island and is authorized in the Providence Home Rule Charter. It consists of five members appointed by the mayor of Providence and two members from the city council. It receives funds from city bond issues and from direct appropriations from city revenues, and it will be dissolved, with the city succeeding to its rights, liabilities and powers, upon payment of all the bonds and notes issued by the city for Civic Center purposes. *See* 1969 R.I.Pub.Laws ch. 3, §§ 1 *et seq.*

*Ponce,* 760 F.2d at 379. The court, again citing *Blum,* held that " 'mere ... acquiescence in the initiatives of a private party' " was not enough. *Ponce,* 760 F.2d at 379. It went on to say:

> Had Ponce produced evidence of prelitigation action taken by the state showing that the Secretary [of the Puerto Rico Sports and Recreation Department] shared responsibility for the promulgation or *enforcement* of the eligibility standards ... we might well have a different case.

*Id.* (Emphasis supplied.)

The record in this case is crystal clear that the enforcement of the "no-camera" rule is carried out by state actors, for example, the executive director, the heads of the security and ushering departments, the supervisors of these departments, and the ticket takers, ushers, and security personnel of the Civic Center. It is upon these employees that rests the primary, front-line duty of enforcing the private "no-camera" rule negotiated between the promoter and the performers. The undisputed record establishes how these private agreements are implemented by the Civic Center employees.

Once the "no-camera" rule is negotiated between Gemini and the performer, Russo or Gemini's production and security manager contact Mr. Stephen Morrison Lombardi, the Executive Director of the Civic Center, to inform him orally of the "no-camera" prohibition. Lombardi then calls a staff meeting and informs the concerned department heads that a "no-camera" rule is in effect for a particular event. This supervisory staff follows up on these instructions right up into the concert, which includes posting signs to this effect. The personnel at the turnstiles prevent those who openly display photographic equipment from entering the premises, and the ushering and security staff continue to enforce the rule throughout the concert. In fact, neither Russo nor Gemini's personnel become directly involved in enforcement of their rule. When they see potential violators of the "no-camera" rule, they will go to the nearest Civic Center supervisor and alert that supervisor of the infringement. The supervisor then proceeds to take appropriate action through the individual ushers or security personnel.

The district court and appellees have relied heavily on the fact that the Civic Center employees are paid by Gemini, as an indication of a lack of state involvement. The record is not clear as to whether Gemini directly pays these persons, or there is merely a reimbursement to the Civic Center for the cost of providing these services. We can assume the most favorable factual circumstances to appellees, *i.e.,* direct payment, as this is a distinction without significance in this case. There is no question that these persons remain at all times within the control and direction of the Civic Center, the determinative factor in finding an employment relationship.[4]

There is no question that the *enforcement* of the "no camera" rule by the Civic Center employees supplies the state involvement nexus that is a jurisdictional requisite under 42 U.S.C. § 1983. *Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 45–47, 103 S.Ct. 948, 954–56, 74 L.Ed.2d 794 (1983); *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937–42, 102 S.Ct. 2744, 2753–56, 73 L.Ed.2d 482 (1982); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 177–79, 92 S.Ct. 1965, 1973–74, 32 L.Ed.2d 627 (1972); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Cinevision Corp. v. City of Burbank,* 745 F.2d 560, 569 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). *International Society for Krishna Consciousness, Inc. v. New Jersey Sports and Exposition Authority,* 691 F.2d 155, 159 (3d Cir.1983); *Post Newsweek Stations-Connecticut, Inc. v. Travelers Insurance Co.,* 510 F.Supp. 81, 85 (D.Conn.1981). *See*

---

**4.** In addition to what has already been discussed of relevance to this issue, Lombardi testified: "*We* have approximately a hundred people working on (sic) every event." (Emphasis supplied.)

*Blum v. Yaretsky,* 457 U.S. 991, 1003–05, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982); *Rendell-Baker v. Kohn,* 457 U.S. 830, 839–43, 102 S.Ct. 2764, 2770–72, 73 L.Ed.2d 418 (1982); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 358, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis,* 407 U.S. at 171–77, 92 S.Ct. at 1970–73; *Adickes v. S.H. Kress & Co.,* 398 U.S. at 171, 90 S.Ct. at 1615; *Ponce,* 760 F.2d at 377–82; *Johnson v. Educational Testing Service,* 754 F.2d 20, 23 (1st Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 3504, 3505, 87 L.Ed.2d 635 (1985). *See also Shelley v. Kraemer,* 334 U.S. 1, 19, 68 S.Ct. 836, 845, 92 L.Ed. 1161 (1948). It is only this enforcement that provides any practical substance to the private "no-camera" agreement, just as in *Shelley* the private discriminatory covenants lacked any operative effect until they were backed by the full coercive power of the state courts. *Id.*

We remark that it is unlikely this issue would have been before us if the Civic Center had been enforcing a rider clause that prohibited members of some racial group from entering a particular concert. We stress that the issue of state action is separate from the constitutional issue lying at the heart of a § 1983 action. Institutions about the outcome of the constitutional issue must not affect consideration of the very different issue of state action. In this case, whether or not appellant's first and fourteenth amendment rights were violated there was state action for purposes of § 1983.

The district court did not decide the merits of the validity of the "no-camera" rule but rather dismissed the case on jurisdictional grounds. Although the merits of the validity of the "no camera" rule have been briefed by some of the parties on appeal, we do not think it appropriate for us to rule on this issue without first giving the district court the opportunity to decide this matter. We do not, of course, indicate what the outcome of said ruling should be.

*Reversed and Remanded.*

IRVING HILL, Senior District Judge (dissenting).

I respectfully dissent.

I would state the facts a little differently than the statement given in the majority opinion.

Plaintiff is a free-lance photographer who takes pictures of artists and celebrities in public places or during public performances. He sends the pictures to a sales representative in New York who circulates them to potential customers. If somebody buys the pictures, plaintiff gets paid. Plaintiff lives in Providence, Rhode Island and often takes pictures of performers at rock concerts and other events at the Providence Civic Center. Plaintiff once achieved some national notoriety by taking a picture of Linda Rondstadt during a performance by her in the Providence Civic Center.

The Civic Center is a government owned facility which is leased to various people and enterprises for various kinds of performances and events. For example, the NCAA Basketball Tournament was held there. Among the people who lease it on occasion is the defendant Russo, a concert broker and promoter, who operates in the corporate form as Gemini Concerts, Inc., also a defendant. When Russo decides that he might make some money booking a given musician or concert group into the Center, he checks with the performer on possible dates and with the Center as to its availability on those dates. If they match, he enters a one-time lease with the Center for the event.

Since the Center is a governmental facility, its employees are government employees. For what are probably good reasons, the Center apparently does not allow the tenants to provide their own ushers, ticket-takers or security people. Such functions are performed by the Center's own employees. The majority assumes that the tenant reimburses the Center for the cost and services on the day of the tenant's use. In my view, that fact is essentially irrelevant. The result would be the same if there were no reimbursement and the Center merely

factored in the cost of such personnel in its rent schedule.

In negotiation with musicians and rock groups (and perhaps other performers) Russo sometimes, but not always, encounters a demand from the performers that no one be permitted to use cameras at their performances. When that demand is made, he yields to it and a provision to that effect is included in the contract between the performers and Gemini. Russo then orally informs the Center's staff of the no-camera requirement, which is carried out by the Center's ticket-takers, ushers and security people. The no-camera policy is not a policy of the Center. The Center has no interest in it one way or the other. Many, probably most, of the events at the Center allow cameras. The no-camera policy is not a policy attributable to Russo or Gemini. Neither originates or advocates it. The policy originates from some of the talent which they book.

Plaintiff D'Amario has in the past bought tickets for some of Gemini's Center concerts which were no-camera events. He has been turned away at the door because he was carrying cameras. In this action, invoking 42 U.S.C. § 1983, he sues the Center, Russo and Gemini seeking damages and an injunction.

I agree with the majority that the Center's ticket-takers, ushers and security people, being state employees, are state actors. But that does not end the inquiry. This court flatly stated in *Johnson v. Educational Testing Services,* 754 F.2d 20, 23 (1st Cir.1985) that "not all actions by state actors are state actions." This Court held in *Johnson* that a plaintiff charging deprivation of constitutional rights under Section 1983 must meet a two-fold burden. In addition to showing that the party charged with the deprivation was a state actor, he must also show that the deprivation was caused by "the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state." In *Gilmore v. Salt Lake Community Action Program,* 710 F.2d 632, 638 (10th Cir.1983) (cited with approval in *Johnson* ), the sec-

ond requirement was phrased as the need to show that the conduct complained of resulted from a "rule, policy or decision attributable to the state."

The second requirement is simply not met in the present case. The Center's no-camera policy is not attributable to the state. It was not created by the state. It is not imposed by the state. In my view, the fact that state employees perform the mechanical task of carrying out the private contractual arrangement between the promoter and the performer is not enough to constitute state action. The ticket-takers, ushers and security people are simply not carrying out a state policy, nor are they performing a function for which the authority of the state is needed. *See Polk County v. Dodson,* 454 U.S. 312, 319, 102 S.Ct. 445, 450, 70 L.Ed.2d 509 (1981).

I believe the majority's statement that the Center is "wholly responsible" for enforcing the no-camera policy is not justified by the record. The responsibility for promulgating it and enforcing it falls on the promoter Russo-Gemini and the performers. The majority makes much of the fact that the event staff is under the "control and direction" of the Center. An event could not be held and handled satisfactorily otherwise. But that fact does not make the policy in question—the *deprivation* of which plaintiff complains—state policy or state action, at least as I read the record. As the Tenth Circuit stated in *Gilmore,* "by establishing a two-part test for state action, *Lugar* requires not only a correct characterization of the parties as state actors, but also a finding that *alleged deprivation is related to a governmental objective.*" 710 F.2d at 638 n. 13 (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)) (emphasis added).

There is no basis in the record for concluding that plaintiff's inability to get inside the Center while carrying cameras is related to any governmental objective or decision.

I would affirm the judgment.